**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DESIGN DATA CORPORATION, a
Nebraska corporation,
*Plaintiff-Appellant*,

v.

UNIGATE ENTERPRISE, INC., DBA
Unigate Steel Detailing, a California
corporation; UNIGATE GRAPHIC,
INC., DBA Unigate Steel Detailing, a
California corporation; UNIGATE
INVESTMENT, INC., DBA Unigate
Steel Detailing, a California
corporation; LOUIS LIU, an
individual; HELEN ZHANG, an
individual; JIANJUN LIU, an
individual,
*Defendants-Appellees.*

No. 14-16701

D.C. No.
3:12-cv-04131-
WHO

DESIGN DATA CORPORATION, a
Nebraska corporation,
                    *Plaintiff-Appellee*,

                v.

UNIGATE ENTERPRISE, INC., DBA
Unigate Steel Detailing, a California
corporation; UNIGATE GRAPHIC,
INC., DBA Unigate Steel Detailing, a
California corporation; LOUIS LIU,
an individual; HELEN ZHANG, an
individual,
                    *Defendants-Appellants*.

No. 14-17317

D.C. No.
3:12-cv-04131-
WHO

OPINION

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick III, District Judge, Presiding

Argued and Submitted October 17, 2016
San Francisco, California

Filed February 9, 2017

Before:  Michael Daly Hawkins, Consuelo M. Callahan,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hawkins

# SUMMARY[*]

## Copyright

The panel affirmed in part and reversed in part the district court's summary judgment in favor of the defendants in an action under the Copyright Act.

Design Data Corporation alleged that Unigate Enterprise, Inc., infringed the copyright on Design Data's computer aided design program by downloading an unauthorized copy of the program and importing and distributing within the United States program output generated by a Chinese contractor using an unauthorized copy of the program.

The panel reversed the district court's summary judgment on the downloading claim. The panel held that there was a material question of fact whether Unigate's download was more than an insignificant violation of Design Data's copyright.

The panel affirmed the district court's summary judgment on the importation-and-distribution claim. The panel held that the copyright in the program did not extend to the program's output of images and files. The panel also affirmed the district court's decision to refuse Design Data a further opportunity to amend its complaint.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kymberleigh N. Korpus (argued) and Yano Rubinstein, Rubinstein Law, San Francisco, California, for Plaintiff-Appellant/Cross-Appellee.

J. James Li, Ph.D. (argued), LiLaw Inc., Los Altos, California, for Defendants-Appellees/Cross-Appellants.

**OPINION**

HAWKINS, Circuit Judge:

**Introduction**

We address issues concerning the scope and reach of copyright protection. Design Data Corporation ("Design Data") brought the underlying action against Unigate Enterprise, Inc. ("UE"), alleging that UE infringed the copyright on Design Data's computer aided design ("CAD") program by downloading an unauthorized copy of the program and importing and distributing within the United States program output generated by a Chinese contractor using an unauthorized copy of the program. We have jurisdiction pursuant to 28 U.S.C. § 1291. Determining that a genuine issue of material fact exists with respect to the downloading claim, we reverse the district court's grant of summary judgment in part and remand for proceedings consistent with this opinion. At the same time, we affirm the district court's summary judgment on the importation-and-distribution claim and the denial of Design Data's motion for leave to file a second amended complaint.

## Factual and Procedural Background

Design Data created and owns a copyrighted CAD software program called SDS/2. Based on data input by the user, SDS/2 uses building and engineering codes to produce two- and three-dimensional drawings and models of steel structural components. These drawings and models enable the fabrication of steel components and assist with the building of structures. When SDS/2 is used to design steel components, SDS/2 also creates "job files," which contain all information and files related to the project.

UE is a California corporation that outsources steel detailing services by selling steel detailing CAD files created by contractors in China. At least one of UE's Chinese contractors created CAD images and files using an unauthorized copy of SDS/2 and sent the output to UE. UE, in turn, sold those images and files to clients in the United States. Design Data contends that UE was aware its Chinese contractor was using an unauthorized copy of SDS/2, UE denies such knowledge.

Despite advertising on its website that "We use the SDS/2 . . . if required," UE never purchased a license to use SDS/2 and claims it never actually used the program. UE has admitted, however, to downloading a copy of SDS/2 from a website to a UE external hard drive. UE claims it was curious about "what the software was all about" and abandoned its efforts after reading the program's "complicated explanations." UE maintains that it merely downloaded a "free demo" of SDS/2 and was unaware it was actually a "cracked" (or hacked) copy. Design Data, however, contends it does not offer free trials of SDS/2 over the internet.

Suspecting that UE was using SDS/2 without a license, Design Data visited UE's offices. Design Data found installation files on UE's computers for two versions of SDS/2 and three patch files, whose purpose is to allow a user to work around the code protection for SDS/2. Relying on UE's technical expert, the district court concluded there was no evidence that UE had actually installed SDS/2 on the computers that Design Data was allowed to inspect.[1] UE's computers did, however, contain SDS/2-generated images and job files, suggesting the CAD program had actually been used in some fashion.

Design Data brought the action below against UE, alleging copyright infringement based on UE's use of SDS/2 and its importation and distribution of SDS/2-generated images and files created outside the United States. The district court granted UE's motion for summary judgment, finding that its download of SDS/2 was de minimis copyright infringement, that any infringement by UE's Chinese contractor was beyond the reach of U.S. copyright law, and that Design Data failed to show that SDS/2's copyright protected the SDS/2-generated images and files at issue.

The district court also denied Design Data's request for leave to file a second amended complaint and UE's motion for attorney's fees. These timely appeals followed.

---

[1] An external hard drive, of course, cannot operate on its own, and when attached to a computer system becomes operationally part of the computer itself. Michael Graves, COMPUTER TECHNOLOGY ENCYCLOPEDIA: QUICK REFERENCE FOR STUDENTS AND PROFESSIONALS 126–27 (2009).

## Discussion

### *Standard of Review*

We review the district court's grant of summary judgment de novo. *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 954 (9th Cir. 2013). Denial of leave to amend is reviewed for abuse of discretion. *In re Daisy Sys. Corp.*, 97 F.3d 1171, 1175 (9th Cir. 1996).

### *Copyright Infringement*

Design Data argues that UE infringed the SDS/2 copyright by: (1) downloading the SDS/2 program without Design Data's authorization; and (2) importing SDS/2-generated images and job files into the United States and distributing them to its U.S. customers.

### *A. UE's Download of SDS/2*

Although the unauthorized use of a copyrighted work is not actionable unless it is "significant enough to constitute infringement," *Newton v. Diamond*, 388 F.3d 1189, 1192–93 (9th Cir. 2003), the facts surrounding UE's download of SDS/2 are disputed. UE claims it downloaded a "free demo," was unaware the copy of SDS/2 it downloaded was unauthorized, and made no further use of SDS/2. Design Data, for its part, insists it does not offer free trials of SDS/2 online and that the presence of SDS/2-generated files on UE's computers suggests the program was in fact put to use.

Taken in the light most favorable to Design Data, the evidence raises a material question of fact precluding summary judgment on the unauthorized download claim. UE

intentionally downloaded a complete copy of SDS/2 and three patch files allowing circumvention of SDS/2's licensing requirement.  UE's website advertised that "We use the SDS/2 . . . if required," and UE's computers contained SDS/2-generated images and job files.  This evidence raises a factual question whether UE's download was more than an "insignificant violation[]" of Design Data's copyright. *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997).  In light of "the overwhelming thrust of authority[, which] upholds liability even under circumstances in which the use of the copyrighted work is of minimal consequence," it was error to grant summary judgment on the basis that UE's download of SDS/2 constituted a de minimis infringement.   2 NIMMER ON COPYRIGHT § 8.01[G] (collecting cases); *see also BMG Music v. Perez*, 952 F.2d 318, 320 (9th Cir. 1991) (rejecting argument that any conduct short of "wholesale importation" equals de minimis infringement).

## B.  UE's Importation and Distribution of SDS/2-Generated Images and Files

To establish copyright infringement, Design Data must prove (1) ownership of the SDS/2 copyright, and (2) copying of protectable expression by UE.  *See Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987).  Because there is no dispute that Design Data owns the SDS/2 copyright, UE's liability for importing and distributing SDS/2-generated images and files turns on whether the SDS/2 copyright extends to the program's output.

The district court, relying on an unpublished district court decision, rejected Design Data's argument that the SDS/2 copyright could extend to the program's output.  *See Design*

*Data Corp. v. Unigate Enters. Inc.*, 63 F. Supp. 3d 1062, 1068 (N.D. Cal. 2014) (citing *Atari Games Corp. v. Nintendo of Am., Inc.*, No. C 88-4805 FMS, 1993 U.S. Dist. LEXIS 8183, at *11–12 (N.D. Cal. Apr. 15, 1993)). Other authorities, however, suggest that the copyright protection afforded a computer program may extend to the program's output if the program "does the lion's share of the work" in creating the output and the user's role is so "marginal" that the output reflects the program's contents. 4 NIMMER ON COPYRIGHT § 13.03[F] (quoting *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 283 (S.D.N.Y. 2001)).

Assuming, without deciding, that copyright protection does so extend, we nonetheless conclude that Design Data did not raise a question of material fact that the imported SDS/2-generated images and files reflected the contents of its program. Design Data did not present evidence establishing that SDS/2 "does the lion's share of the work" in creating the steel detailing files or that the user's input is "marginal." *Torah Soft*, 136 F. Supp. 2d at 283. Thus, the district court correctly rejected Design Data's argument that the SDS/2 copyright protects the images and files that UE imported and distributed.

### *Leave to Amend*

The district court did not abuse its discretion in denying Design Data leave to file a second amended complaint. Design Data only moved for leave to amend after the court-ordered discovery cutoff date and three days before the hearing on UE's motion for summary judgment.

## Conclusion

We affirm the district court's determination that the copyright protection afforded Design Data's computer program does not, on these facts, extend to the program's output. We also affirm the district court's decision to refuse Design Data a further opportunity to amend its complaint. However, we reverse the district court as to its determination on summary judgment that UE's download of Design Data's SDS/2 program was a de minimis copyright violation, and we remand for further proceedings consistent with this opinion.[2]

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**.

Each party to bear its own costs on appeal.

---

[2] We leave UE's separate appeal from the denial of attorney fees (No. 14-17317) for the district court to consider upon completion of proceedings on remand.