**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| GREAT MINDS, a non-profit organization,<br>         *Plaintiff-Appellant*,<br><br>v.<br><br>OFFICE DEPOT, INC., a Delaware corporation,<br>         *Defendant-Appellee.* | No. 18-55331<br><br>D.C. No.<br>2:17-cv-07435-JFW-E<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted November 8, 2019
Pasadena, California

Filed December 27, 2019

Before: Jerome Farris and M. Margaret McKeown, Circuit
Judges, and Virginia M. Kendall,[*] District Judge.

Opinion by Judge Farris

---

[*] The Honorable Virginia M. Kendall, United States District Judge for the Northern District of Illinois, sitting by designation.

## SUMMARY[**]

### Copyright

The panel affirmed the district court's dismissal for failure to state a claim of a copyright infringement brought by Great Minds, publisher of math curriculum Eureka Math.

The panel held that defendant Office Depot, Inc., did not become a licensee of a Creative Commons license, and become bound by its terms, or otherwise infringe Great Minds' copyright by making copies of Eureka Math materials for a profit on behalf of school and school district licensees. There was no dispute that the school and school districts licensees' copying of Great Minds' material was permitted under the license. There also was no dispute that, if Office Depot were itself a licensee, commercial copying of Great Minds' material would fall outside the scope of the license and infringe Great Minds' copyright. The panel held that, under California law, the school and school district licensees' exercise of their rights under the license through the services provided by Office Depot did not result in Office Depot becoming a licensee. The panel further held that the district court did not abuse its discretion in denying leave to amend the complaint.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Christopher J. Sprigman (argued), Simpson Thatcher & Bartlett LLP, New York, New York; Jeffrey E. Ostrow, Simpson Thatcher & Bartlett LLP, Palo Alto, California; Rhett O. Millsaps, II, Law Office of Rhett O. Millsaps II, New York, New York; for Plaintiff-Appellant.

Jennifer A. Golinveaux (argued), Winston & Strawn LLP, San Francisco, California; Diana Hughes Leiden, Winston & Strawn LLP, Los Angeles, California; for Defendant-Appellee.

Andrew M. Gass (argued) and Elizabeth H. Yandell, Latham & Watkins LLP, San Francisco, California; Diane M. Peters, Creative Commons Corp., Mountain View, California; for Amicus Curiae Creative Commons Corporation.

---

**OPINION**

FARRIS, Circuit Judge:

Plaintiff-Appellant Great Minds, publisher of math curriculum Eureka Math, appeals from the January 18, 2018 dismissal under Fed. R. Civ. P. 12(b)(6) of its copyright infringement claim against Office Depot, Inc. in the United States District Court for the Central District of California (Walter, J.). We AFFIRM. Office Depot did not itself become a licensee of the "Creative Commons Attribution-NonCommercial-ShareAlike 4.0 International Public License" (and become bound by its terms) or otherwise infringe Great Minds' copyright by making copies of Eureka

Math materials for a profit on behalf of school and school district licensees.

## BACKGROUND

Great Minds is an education-based non-profit organization. It created and copyrighted a math curriculum called "Eureka Math" for grades PreK-12, which it publishes and sells commercially in print form nationwide. It also releases digital files of Eureka Math online for free download to any member of the public under a limited public copyright license template produced by Creative Commons.[1] Under the License, "[e]very recipient of [Eureka Math] automatically receives an offer from [Great Minds] to exercise the Licensed Rights." License § 2(a)(5)(A).

The License grants "the individual or entity exercising the Licensed Rights" a "worldwide, royalty-free, non-sublicensable, non-exclusive, irrevocable license to . . . reproduce and Share [Eureka Math], in whole or in part, for NonCommercial purposes only . . . ." License §§ 1(n), 2(a)(1). The License defines "Share" to mean, in pertinent part, "to provide material to the public by any means or process that requires permission under the Licensed Rights, such as reproduction, public display, public performance, distribution, dissemination, communication, or importation, . . . ." License § 1(l). "NonCommercial" means, in pertinent

---

[1] Creative Commons is a non-profit organization that offers free copyright license templates to be used to share and protect creative and academic works. *See What We Do*, CREATIVE COMMONS, (Nov. 17, 2019, 3:23 PM), https://creativecommons.org/about/. The License at issue here is available online at https://creativecommons.org/licenses/by-nc-sa/4.0/legalcode.

part, "not primarily intended for or directed towards commercial advantage or monetary compensation." License § 1(k).

But § 2(b)(3) of the License reserves Great Minds' right to collect royalties for *commercial* uses of Eureka Math:

> To the extent possible, the Licensor waives any right to collect royalties from [the licensee] for the exercise of [these NonCommercial] Licensed Rights, whether directly or through a collecting society under any voluntary or waivable statutory or compulsory licensing scheme. In all other cases the Licensor expressly reserves any right to collect such royalties, including when [Eureka Math] is used other than for NonCommercial purposes.

If any individual or entity exercising the licensed rights "fail[s] to comply with [the License], [their] rights under [the License] terminate automatically." License § 6(a). Great Minds claims that this applies equally to every individual or entity that possesses Eureka Math materials, including all "downstream recipients."

Office Depot provides copy services on request and behalf of public schools and school districts. It charges a fee for those services, and at times it makes copies of Eureka Math materials for the schools' use. It does not sell those copies to the public in Office Depot stores. Great Minds claims, and Office Depot does not dispute, that Office Depot employs field representatives to advertise its copying services to schools and school districts that use Eureka Math. In 2015,

when Great Minds discovered that Office Depot was reproducing Eureka Math on behalf of the schools, the parties entered into a separate licensing agreement, whereby Great Minds permitted Office Depot to make the copies in exchange for royalty payments. After the Eastern District of New York ruling in *Great Minds v. FedEx Office and Print Servs., Inc.*, No. 16-CV-1462 (DRH)(ARL), 2017 WL 744574, at \*4 (E.D.N.Y. Feb. 24, 2017), *aff'd*, 886 F.3d 91 (2d Cir. 2018), which held that the License could not "be read to preclude a licensee from hiring someone to make copies of [Eureka Math] so the licensee can use them for a 'noncommercial' purpose," Office Depot terminated the royalty agreement.[2]

As a result, on October 11, 2017, Great Minds filed suit against Office Depot in district court, alleging claims of copyright infringement, 17 U.S.C. §§ 101 *et seq.*, and breach of contract. Great Minds does not dispute that the school districts' own use and distribution of Eureka Math materials is "NonCommercial" and permitted by the License. Rather, it alleges that Office Depot was "deliberately and willfully infringing [Great Minds' copyrights] by actively soliciting customers for commercial reproduction of Eureka Math," and "by reproducing and distributing Eureka Math for profit without Great Minds' authorization." Great Minds asserts that the "NonCommercial" restriction in the License requires commercial print shops like Office Depot to "negotiate a

---

[2] The *FedEx* decision resulted from a separate suit, with virtually identical facts, filed by Great Minds against a different copy services company. *See FedEx*, 2017 WL 744574, at \*1–2. In March 2018, the Second Circuit affirmed the E.D.N.Y. dismissal on agency principles. *Great Minds v. FedEx Office and Print Servs., Inc.*, 886 F.3d 91, 95–96 (2d Cir. 2018).

license and pay a royalty to Great Minds if they wish to use or reproduce Eureka Math for commercial purposes—*i.e.*, for their own profit.”

On December 6, 2017, Office Depot filed a motion to dismiss the copyright infringement claim, which the district court granted without leave to amend. *Great Minds v. Office Depot, Inc.*, No. CV 17-7435-JFW (EX), 2018 WL 4945643, at \*4–5 (C.D. Cal. Jan. 18, 2018). The court found that the License did not prohibit the school districts from employing third parties like Office Depot to make copies of the Eureka Math curriculum on their behalf. *Id.* This appeal followed.

## DISCUSSION

### I.   MOTION TO DISMISS

We review the district court's Rule 12(b)(6) dismissal *de novo*. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). To survive a motion to dismiss, “a complaint must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If the Court finds that the plaintiff did not allege sufficient facts “to raise a right to relief above the speculative level” and support a cognizable legal theory, it may dismiss the complaint as a matter of law. *Twombly*, 550 U.S. at 555. At this stage, the Court must take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the non-moving party. *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019).

A valid claim for copyright infringement requires "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 548 (1985)). The claim fails if the challenged use of the work falls within the scope of a valid license. *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087–88 (9th Cir. 1989). A copyright license "must be construed in accordance with the purposes underlying federal copyright law." *Id.* at 1088 (citing *Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 854 (9th Cir. 1988)). Federal courts "rely on state law to provide the canons of contractual construction, but only to the extent such rules do not interfere with federal copyright law or policy." *Id.* (citing *Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 482–83 (5th Cir. 1981)).

Here, the parties agree that California law applies to the construction of the License. *Great Minds*, 2018 WL 4945643, at *4 n.7. "Under California law, the interpretation of contract language is a question of law." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–26 (9th Cir. 2003). "[T]he terms of a contract must be construed in a manner that takes into account the context of the language and is consistent with the contract as a whole." *Actuate Corp. v. Int'l Bus. Machs. Corp.*, No. C-09-05892 JCS, 2010 WL 1340519, at *5 (N.D. Cal. Apr. 5, 2010) (citations omitted); Cal. Civ. Code § 1641.

There is no dispute that the school and school district licensees' copying of Great Minds' material is permitted under the License. There also seems to be no dispute that if Office Depot were itself a licensee, commercial copying of Great Minds' material would fall outside the scope of the

License and infringe Great Minds' copyright. The issue we consider then is whether the school and school district licensees' exercise of their rights under the License through the services provided by Office Depot results in Office Depot becoming a licensee. We hold that it does not. A licensee's hiring of a third-party copy service to reproduce licensed material strictly for the licensee's own permitted use does not turn that third party into a licensee that is bound to the License terms. *See Great Minds v. FedEx Office and Print Servs., Inc.*, 886 F.3d 91, 96 (2d Cir. 2018) ("Great Minds' licensees may rely on *non-employee* agents in carrying out permitted uses without converting those agents into independent licensees."); *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 761 (7th Cir. 2006) (affirming summary judgment for both licensee and third party); *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1315 (Fed. Cir. 2005) (independent repair company that copied protected work on behalf of its customers-licensees was not liable for copyright infringement); *Hogan Sys., Inc. v. Cybersource Int'l, Inc.*, 158 F.3d 319, 324 (5th Cir. 1998) (third-party contractor was "sheltered under" the licensee's rights); *Marconi Wireless Tel. Co. of Am. v. Simon*, 227 F. 906, 910 (S.D.N.Y. 1915), *aff'd*, 231 F. 1021 (2d Cir. 1916), *reversed on other grounds*, 246 U.S. 46 (1918) (third-party contractor was "not an infringer because he [was] supplying lawful goods to a lawful licensee"). *See also* Raymond T. Nimmer & Jeff C. Todd, 1 *Modern Licensing Law* § 6:28 (2018) (similarly describing the consensus in courts).[3]

---

[3] Even though Great Minds did not bring a suit against the licensees, we also note that decisions that have addressed whether the *licensee* violates the terms of the license by hiring third parties to exercise the licensed rights are instructive. Those cases held, and we agree, that hiring

Under Great Minds' reading of the License, third party contractors like Office Depot are "downstream recipients" of Eureka Math as contemplated in § 2(a)(5)(A) of the License, meaning they "automatically receive[] an offer from [Great Minds] to exercise the Licensed Rights," they accept that offer the moment the copy store employee presses "copy" on a machine, and they become bound to the terms of the License. Office Depot is not a downstream recipient. That Office Depot employed field representatives to advertise the availability of copying services for schools and school districts that use Eureka Math does not confer a licensee status on Office Depot. Its activities remain within the ambit of the schools and school districts' license.

Great Minds also contends that the "volitional" element, *i.e.*, which entity's employee does the copying, is determinative in this case.[4] But that argument produces the

a third party to exercise the licensee's rights does not convert that third party into an independent licensee. *See, e.g.*, *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 44–45 (1st Cir. 2010) ("When . . . there is no indication that a license-granting copyright owner has restricted the licensee's ability to use third parties in implementing the license, the license is generally construed to allow such delegation."); *Automation by Design*, 463 F.3d at 757–58 (licensee's decision to hire a third party "to manufacture parts for it" did not violate the license); *Intel Corp. v. Advanced Micro Devices, Inc.*, No. C-90-20237-WAI, 1994 WL 594041, at *2–3 (N.D. Cal. Oct. 20, 1994).

[4] The Second Circuit effectively dismissed this "volition" argument on appeal in *FedEx* as irrelevant. *See* 886 F.3d at 97 ("The relevant question here, . . . is not whether [the third party] engaged in volitional conduct when it photocopied the Materials at the school districts' request, but whether the License permits school districts to request those copies at all. We conclude that it does, . . ."). We agree. Great Minds' citation of volition cases is not instructive. Those cases held that a party may be liable for copyright infringement only if the infringing activity was

following absurd results: (1) a teacher may copy Eureka Math on an Office Depot-owned copy machine for a fee in-store, but cannot hand the materials to an Office Depot employee to be copied; (2) a school may pay a copy machine provider a monthly fee to keep a machine on site to copy Eureka Math, but cannot pay Office Depot employees to make the same copies; and (3) a school may permit teachers to copy Eureka Math on school-owned or leased machines, but cannot pay a high school student to make the same copies.

Great Minds' interpretation cannot be correct. The License itself provides no basis to distinguish between permitted copies of Eureka Math made by a licensee's own employees (*e.g.*, school teachers or staff) versus those made by a third-party contractor (*e.g.*, Office Depot employees). We decline to read such a distinction into the License.

Under the License, a non-commercial licensee may hire a third-party contractor, including those working for commercial gain, to help implement the License at the direction of the licensee and in furtherance of the licensee's own licensed rights. The License extends to all employees of the schools and school districts and shelters Office Depot's commercial copying of Eureka Math on their behalf. Holding differently would prevent proper non-commercial licensees from using relatively common means of reproduction to share, engage with, and exercise their rights to the licensed

---

volitional conduct. They do not say the converse—as Great Minds suggests—that with volition, a defendant is liable for copyright infringement. *See, e.g.*, *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017); *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008); *Religious Tech. Center v. Netcom On-Line Commc'n Serv., Inc.*, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995).

work in a way that would contravene the intent of the License and undermine its utility. We conclude that the licensees' contract with Office Depot to exercise the licensees' rights under the License does not impose an independent liability on Office Depot. As a result, Great Minds has failed to state a plausible claim to relief on its copyright infringement claim.

## II.  LEAVE TO AMEND

We review a district court's denial of leave to amend for abuse of discretion. *Design Data Corp. v. Unigate Enters., Inc.*, 847 F.3d 1169, 1172 (9th Cir. 2017). Dismissal without leave to amend is proper if it is clear that "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 984 n.3 (9th Cir. 2011) (internal quotations omitted). The district court denied leave to amend because its interpretation of the License was a question of law and "permitting Great Minds to amend would be an exercise in futility." *Great Minds*, 2018 WL 4945643, at *5 n.8 (citing *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)). We agree.

Great Minds argues that the district court failed to consider relevant extrinsic evidence showing that the License is reasonably susceptible to Great Minds' own interpretation. *See United States v. King Features Entm't, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988) (citing *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir. 1979), *cert. denied*, 444 U.S. 981 (1979)). But Great Minds alleged no such extrinsic evidence in its complaint. On appeal, it now offers three new pieces of evidence: a survey published by Creative Commons and two third-party websites. None of that evidence is relevant to the ultimate issue on appeal:

whether Office Depot's commercial reproduction of Eureka Math on behalf and at the direction of proper non-commercial licensees converted Office Depot into a licensee. The district court did not abuse its discretion in denying leave to amend.

**AFFIRMED.**